**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**DEPARTMENT OF MENTAL HEALTH**

Forensics Services Administration
Legal Services Branch
John Howard Pavilion
Saint Elizabeths Campus
2700 Martin Luther King, Jr. Ave., SE
Washington, D.C. 20032
Tel: (202) 645-8788
Fax: (202) 373-1704

FILED
FEB 15 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LET THIS BE FILED UNDER SEAL
Deborah A. Robinson
U.S. Magistrate Judge
2/15/08

February 5, 2008

The Honorable Deborah Robinson
United States Magistrate Judge
United States District Court
for the District of Columbia
Washington, D.C. 20001

Re: ROSADO, Michael
Case #: 06-000069

Dear Judge Robinson:

In response to a court order, I conducted a competency screening examination of Mr. Michael Rosado on February 5, 2008 in the D.C. Superior Courthouse Cellblock. The purpose of this examination was to assist the Court in its determination of the defendant's competency to stand trial. Mr. Rosado is a 45-year-old man currently facing a charge of Knowingly and Willfully Make a Threat Against a Member of the Immediate Family of the President of the United States. This examination was ordered to ascertain:

1: Whether the defendant is presently mentally competent to understand the proceedings against him and to properly assist in the preparation of his defense; and

2: If the answer to the preceding paragraph is in the negative, does the examining psychiatrist believe the defendant should be transferred to the mental hospital for further examination and treatment?

This report is based on a 70-minute interview with the defendant and review of the Court Order, Criminal Complaint, Affidavit in Support of a Complaint, Pretrial Services Agency Report, D.C. Department of Mental Health computerized consumer information system, and urine drug screening test results. Mr. Rosado was informed of the nature and purpose of this examination and the limits of confidentiality.

Rosado, Michael                                                                              2

Upon mental status examination, Mr. Rosado was alert, cooperative, fully oriented, and in no acute distress. He was adequately groomed and dressed in clean prison-issued clothing. His speech was spontaneous, articulate, normal in tone and volume, and well-modulated. His conversation was logical and coherent, but appeared to be based on delusional content. His conversation was marked by preoccupations with religious and political themes. His thought process was circumstantial and tangential but redirectable. His thought content was marked by a widely encompassing delusional system that he spoke of freely. He encouraged the evaluators to contact John McCain at the White House to get information about the work he is doing. Mr. Rosado said he was had been speaking telepathically to Bill Clinton during his presidential terms and then began communicating with President George Bush regarding "spiritual and political matters." He also communicates with "leaders in Russia, Japan, and other countries." Mr. Rosado reports hearing these voices as if they were in the room with him and sees a vision of their "spritual self." He is able to speak with President Bush when he is on live television. Mr. Rosado also described the symptom of thought insertion, which are thoughts from others intruding on his own. He described himself as "Adam" and Genna Bush as "Eve." He related that when he began speaking telepathically to President George Bush he was arrested after the President wanted him "out of the picture" because he couldn't "let his daughter go." He believed President Bush had been "made aware by God" that he abused his daughter when she was fourteen. Mr. Rosado was "saddened" by not being in a relationship with Genna Bush but denied any intention or thoughts to harm the President or his family. He said he disagreed with the "President's method" but understood his motivation. There was no evidence of suicidal/homicidal ideation or intent. Mr. Rosado denied any form of harm to himself or others. His affect was full in range and appropriate to the matters discussed. His attention, concentration, and abstract thinking abilities appeared unimpaired. His memory for recent and remote events seemed intact, as did his immediate recall. His judgment and insight appeared impaired.

According to the D.C. Department of Mental Health's computerized consumer information system, Robert Benedetti, Ph.D. previously evaluated in the Cellblock. During his competency screening examination on February 23, 2006 for the same charge, Mr. Rosado was adequately groomed, articulate, and cooperative with the examination. His conversation was replete with delusional preoccupations regarding his relationship with Genna Bush and the President. At that time he described himself as a "Christian prayer warrior" and also endorsed the ability to telepathically communicate with President Bush. The opinion was that his version of the events surrounding his arrest was based on his delusions. Although he had a factual understanding he was unable to make reasoned choices regarding plea options and lacked a rational understanding of the proceedings against him. It was recommended he transferred to a mental hospital for further examination and treatment. He had no other record of receiving mental health treatment by the Department of Mental Health.

Mr. Rosado said he had attempted suicide by cutting his right arm with a razor blade in 1984 after a break up with his girlfriend at the time. He was admitted for three days and received stitches in his right arm. Mr. Rosado reported he first began communicating telepathically with Bill Clinton in 1994 and began writing letters to the President at that time. He was struck by a truck in Winston-Salem, NC in 1999 and suffered a fractured

Rosado, Michael                                                                                       3

skull. Mr. Rosado indicated a scar on the right side of his forehead was from this head injury. After the head injury he felt he had problems with his memory and stayed for five years in the "Christian Care Rest Home" in North Carolina. This facility had "people with schizophrenia, bipolar and old people in wheelchairs" but Mr. Rosado said he was there because of his head injury and that he was homeless before the accident. During this hospitalization he reported taking lithium for diabetes. He denied any symptoms of mania during that time.

Prior to his arrest Mr. Rosado said he had been admitted on two occasions to the psychiatric ward at George Washington University Hospital "when the weather was bad" and he needed a place to stay. It was pointed out this was an unusual reason for an admission and he said "well I told them I worked for the President and I'm sure they called him to find out." The prior report by Dr. Benedetti indicated Mr. Rosado sought admission to George Washington University Hospital after having thoughts of harming himself. Mr. Rosado denied this today. Most recently, Mr. Rosado has been in the Federal Prison in Butner, NC and said he was being treated for depression with Prozac but had also taken the antipsychotics Haldol, Risperdal and Prolixin. He said he received Prolixin as a shot every two weeks. He said he has not received any of these medications in about four or five months.

Urine drug screening test results from February 22, 2008 were negative for cocaine, PCP and opiates. Mr. Rosado denied any illicit drug use and endorsed only social alcohol, which he described as one drink every three or four months, several years ago.

The defendant knew the nature and gravity of the charges against him but his account of the circumstances surrounding his arrest was based on his delusional thinking. He demonstrated a basic and accurate knowledge of legal proceedings and the roles of various courtroom officials, including the function of a jury. He was able to discuss the various plea options available, including the concept of plea bargaining, but did not seem to have the capacity to make reasoned choices regarding plea options including the defense of Not Guilty by Reason of Insanity. He had a basic understanding of his rights as a defendant including those that are waived in the process of entering a guilty plea. He understood the importance of cooperating with defense counsel and seemed to appreciate the adversarial nature of legal proceedings. During the clinical interview, there was nothing to indicate the defendant would be unable to conduct himself appropriately in the courtroom, and he identified proper courtroom behavior.

On the basis of this evaluation, it is my opinion, with a reasonable degree of medical certainty, that at this time the defendant is incompetent to participate in court proceedings. Further evaluation is necessary following mental health treatment in a secure facility. Due to Michael Rosado's current mental condition, he should be transferred to a mental hospital for further examination and treatment. It is reasonable that his psychiatric condition has declined without treatment with antipsychotic medications. Once medications have been restarted to address his delusional thinking he can be reevaluated to determine the necessity of continued hospitalization.

Rosado, Michael                                                                                    4

Respectfully submitted,

Tyler G. Jones, M.D.
Forensic Psychiatry Fellow
Georgetown University Hospital

Robert Benedetti, Ph.D.
Chief, Legal Services Branch